# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ANDREW FERGUSON

     Plaintiff,

v.                                                    No. CV 11-1001 WPL/CG

BOARD OF COUNTY COMMISSIONERS
OF SIERRA COUNTY, et al.

     Defendants.

---

LAWRENCE PARKIN,

     Plaintiff,

v.                                                    No. CV 11-1080 WPL/CG

BOARD OF COUNTY COMMISSIONERS
OF SIERRA COUNTY, et al.

     Defendants.

## MEMORANDUM OPINION AND ORDER

Sierra County Detention Facility ("SCDF") is located in Truth or Consequences, New Mexico, and is overseen by the Sierra County Board of County Commissioners ("the County"). In November 2011, December 2011, and April 2012, eight former inmates[1] of SCDF brought separate causes of action against the County, County Manager Janet Porter-Carrajo,

---

[1] The eight original plaintiffs and their associated case numbers are: Andrew Ferguson (11cv1001), Mark Nantz (11cv1002), James Lasater (11cv1032), Marcos Baray (11cv1038), Anthony Gonzales (11cv1041), Lawrence Parkin (11cv1080), David Clark (11cv1083), and Timothy Latona (12cv370). These cases were consolidated under the Ferguson case for the purposes of discovery and pretrial motions. (Doc. 33; Doc. 48.)

Administrator of SCDF Curtis Cherry, and a number of individual corrections officers.[2] Per the request of the parties, I consolidated all eight cases, and Defendants then move to dismiss them with prejudice. (Doc. 60; Doc. 61.) After the motion to dismiss was fully briefed, six of the eight plaintiffs settled their claims with Defendants, but the claims of Andrew Ferguson and Lawrence Parkin remain. Pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge, resolve dispositive matters, and enter a final judgment. Having considered the facts and relevant law, I grant in part and deny in part Defendants' motion to dismiss.

## PROCEDURAL BACKGROUND

Ferguson and Parkin filed their individual cases in late 2011, alleging that Defendants violated their constitutional rights by providing sub-standard medical care while they were incarcerated at SCDF. These two were ultimately joined by six other former inmates alleging similar constitutional violations against the same group of defendants. Early in the litigation, Defendants brought motions to dismiss in seven[3] of the cases. (Doc. 16[4]; Nantz 11cv1002 Doc. 18; Lasater 11cv1032 Doc. 17; Baray 11cv1038 Doc. 22; Gonzales 11cv1041 Doc. 18; Parkin 11cv1080 Doc. 21; and Clark 11cv1083 Doc. 17.) Before I could consider the motions, the parties moved to consolidate the cases for the purposes of discovery because of the similarity of the parties, claims, and legal counsel. (Doc. 21.) I granted the motion and ordered that the cases

---

[2] Each complaint names the County, Porter-Carrejo, Cherry, and some combination of individual corrections officers. Ferguson named David Estavillo, Virgel Eaton, Samuel Wilson, Robert Smith, Christine Chavez, and Luis Ortega. Parkin also named Estavillo, Eaton, Smith, and Ortega in addition to Nancy Goodwin, Mark Hopkins, Tessie Apodaca, and Ruben Lucero.

[3] At the time of Defendants' first motion to dismiss, there were only seven cases, as the eighth original plaintiff had not yet filed his lawsuit.

[4] Unless otherwise specified, citations to "Doc." are to documents filed in the lead case, Ferguson 11cv1001.

be consolidated under Ferguson 11cv1001, the earliest filed case. (Doc. 24.) Two weeks after consolidating the cases, I received a second motion for consolidation, this time requesting that the cases be consolidated for all pretrial purposes, but specifying that each case have a separate trial. (Doc. 29.) I granted this motion and made Ferguson 11cv1001 the lead case for all purposes. (Doc. 33.)

A month after I entered the second consolidation order, I granted an unopposed motion to dismiss all state law claims and gave Plaintiffs leave to file amended complaints (Doc. 41; Doc. 42), which they did (Doc. 43; Parkin 11cv1080 Doc. 30). Around this time, I consolidated the eighth and final case with this matter. (Latona 12cv370 Docs. 1& 15.)

On July 13, 2012, Defendants filed a motion to dismiss all eight complaints (Doc. 60) and a memorandum in support thereof (Doc. 61), which raised twelve grounds for dismissal (*id*. at 4, 5, 8, 35, 39, 41, 42, 43, 45). Plaintiffs filed a joint response brief in opposition. (Doc. 67.) The response indicated that Plaintiffs had submitted a motion to amend their complaints to Defendants on the same date (*id*. at 3), and it only addressed the merits of Defendants' arguments with respect to qualified immunity and the sufficiency of Plaintiffs' claim that the individual defendants violated their Eighth Amendment rights (*id*. at 15). Plaintiffs never filed a motion for leave to amend their complaints.

After the motion to dismiss was fully briefed, Defendants filed a motion to disqualify Plaintiffs' counsel (Doc. 82), and the case was stayed pending the outcome of the motion (Doc. 87). Plaintiffs' counsel did not oppose the motion to disqualify (Doc. 89), and the Court ordered Plaintiffs' counsel to withdraw (Doc. 91). Withdrawals of counsel were eventually filed in all eight cases, and both Ferguson and Parkin are now pro se. (Doc. 95; Parkin 11cv1080 Doc. 34.)

On January 9, 2013, Defendants filed a notice of the death of Ferguson (Doc. 103), which was served on Ferguson's potential successors on January 30, 2013 (Doc. 110). Since the motion to dismiss was fully briefed and pending resolution prior to his death, I decided to proceed with the merits.[5]

Between February and March 2013, Defendants settled their claims with six of the Plaintiffs, and I granted their unopposed motions to dismiss. (Nantz 11cv1002 Doc. 41; Lasater 11cv1032 Doc. 31; Baray 11cv1038 Doc. 38; Gonzales 11cv1041 Doc. 36; Clark 11cv1083 Doc. 30; Latona 12cv370 Doc. 21). Because there have been no indications of settlement in Ferguson's and Parkin's cases, I have decided to rule on the outstanding motion to dismiss.

### STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). To survive a motion to dismiss, the pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require "detailed factual allegations," but it does require more than bland accusations against the defendant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Supreme Court recently reaffirmed this standard in *Iqbal*, stating that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

While the complaint need not include "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

---

[5] At the time of filing of this order, Ferguson's successors have yet to comply with Federal Rule of Civil Procedure 25(a) and move to substitute a party. Ferguson's successors have ninety days from the date the notice was served, *see* FED. R. CIV. P. 25(a), which is May 1, 2013.

U.S. at 555 (citations omitted). The factual allegations must also suffice to "inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity required depends on the nature of the complaint, but in § 1983 actions, it is "particularly important" that the complaint specify the time, place, and person involved in the matter at issue. *Id.* at 1250 (citations omitted). "If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. If it omits some necessary facts, however, it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## DISCUSSION

Defendants move to dismiss Ferguson's and Parkin's complaints with prejudice for failure to state a claim. As grounds, Defendants raise twelve arguments: (1) failure to include a demand for relief; (2) inadequate notice to Defendants; (3) failure to allege facts to support claims of Eighth Amendment violations; (4) failure to state a claim of supervisory liability against Porter-Carrejo and Cherry; (5) failure to establish a municipal liability claim against the County for want of sufficiently pled underlying constitutional violations; (6) failure to state facts that show the County had a policy or custom of deliberate indifference; (7) qualified immunity; (8) the declaratory relief requested is inappropriate; (9) injunctive relief is inapplicable because there is no evidence either Plaintiff is currently detained at SCDF; (10) punitive damages are inappropriate because Plaintiffs have not properly shown individual capacity claims; (11) joint and several liability is not available for punitive damages; and (12) all official capacity claims were previously dismissed with prejudice. (Doc. 61 at 4, 5, 8, 35, 39, 41, 42, 43, and 45.) I will discuss each issue in turn. Since this case involves different complaints with different factual

scenarios, I will discuss each factual background[6] and the applicable legal standards where it is relevant to the analysis in order to avoid confusion.

## I.        Demands for Relief Sought

Defendants' first ground for dismissal is that the complaints fail to include demands for the relief Plaintiffs seek as required by Federal Rule of Civil Procedure 8(a)(3). (Doc. 61 at 4.) Specifically, Defendants allege that Plaintiffs' complaints fall short of Rule 8(a)(3) because they do not specify which Defendants they are holding liable under each count. (*Id*.) Plaintiffs did not respond to this argument.

Rule 8(a)(3) requires that the pleader include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Plaintiffs have clearly met this requirements, since both complaints request compensatory damages and injunctive relief against all Defendants and punitive damages against all individually named Defendants. (Doc. 43 at 53-54; Parkin 11cv1080 Doc. 30 at 57-58.) There is no requirement that Plaintiffs specify which damages correlate with which Defendants and which counts. In support of their argument, Defendants cite *Vignery v. Ed Bozarth Chevrolet, Inc*., No. 08-4144-SAC, 2009 U.S. Dist. LEXIS 18359, at *11-12 (D. Kan. March 10, 2009); yet, *Vignery* discusses the notice requirement as it pertains to a plaintiff's obligation to clearly articulate which claims are alleged against which defendant. The case does not discuss the requirement of Rule 8(a)(3) regarding damages, so I find Defendants' reliance entirely misplaced. This argument is meritless and is not a ground for dismissal.

---

[6] For the purpose of a Rule 12(b)(6) motion to dismiss, I will accept all the well-pleaded allegations in Plaintiffs' complaints as true, even if doubtful in fact, and construe the allegations in the light most favorable to Plaintiffs. *Twombly*, 550 U.S. at 555; *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

## II.     Notice Requirement

Defendants' second basis for relief lies in Plaintiffs' ubiquitous use of the phrase "and/or." Plaintiffs frequently make allegations that a group of individual corrections officers acted or failed to act. In listing the corrections officers, they will occasionally use "and/or," such that the statement reads "A, B, C, and/or D failed to . . . ." Defendants claim that Plaintiffs' use of "and/or" in connection with their allegations against individual Defendants violates Rule 8's notice requirements because the complaints fail to precisely identify against whom the violations are alleged. (Doc. 61 at 5.)

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This statement must provide the defendants with "fair notice" by informing them of the actual grounds for the claim against them. *Robbins*, 519 F.3d at 1248. "[T]he degree of specificity necessary to establish . . . fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.* In § 1983 cases, when a plaintiff brings claims against a number of individual and state defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (emphasis in original). Furthermore, "the need for individualized allegations is especially important where . . . 'each of the defendants had different powers and duties,' but the Complaint fails 'to identify specific actions taken by particular defendants that could form the basis' of a constitutional violation." *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)).

Typically, generic allegations against "defendants" fail to meet the fair notice requirement. In *Robbins*, the Tenth Circuit held that a plaintiff's general statements that "defendants" took a certain actions did not satisfy Rule 8; the term "defendants" included the Director of the Department of Human Services for the State of Oklahoma, a daycare owner and operator, four social workers, and ten unnamed social workers or department supervisors. *See* 519 F.3d at 1250. This circuit also affirmed the dismissal of a complaint that only alleged that "defendants" violated the plaintiff's rights, when the "defendants" included four named individuals and fifty John Does. *Brown*, 662 F.3d at 1165; *see also Bryson*, 534 F.3d at 1290 (holding that the use of "Defendants" in an allegation failed to inform one particular defendant of the allegations against him).

The preference against the use of the term "defendants" is not a bright-line rule, though. *Briggs v. Johnson* clarifies that general references to actions by all defendants are not always grounds for dismissal. 274 F. App'x 730 (10th Cir. 2008) (unpublished). The complaint in *Briggs* contained multiple counts against multiple defendants, but the court held that the context of the acts, in conjunction with the facts alleged, provided sufficient notice to the individual defendants of the claims against them. *Id.* at 736. The court looked at the complaint in "its entirety" and held that it met the pleading standards. *Id.* at 737.

Although *Briggs* is unpublished, it assists me now in considering the implications of *Robbins* and *Brown* on the present matter. In *Robbins* and *Brown*, the Tenth Circuit considered complaints which named numerous defendants and brought claims against those defendants collectively, making it difficult for the defendants to know the allegations against them. However, *Briggs* demonstrates that these cases do not create an absolute rule requiring the

utmost precision from plaintiffs. Rather, *Briggs* indicates that fair notice does not require particularized, actual notice, but constructive notice.

Here, Defendants challenge the use of the phrase "and/or" in Plaintiffs' complaint. Relying on *Robbins* and *Brown*, they argue that the use of "and/or" is functionally the same as the term "defendants" since "and/or" does not give particularized notice to Defendants of the allegations brought against them. (Doc. 61 at 7.) While the phrase "and/or" creates some ambiguity, the phrase and the context in which it is used makes the present matter more like *Briggs* than like *Robbins* or *Brown*. Plaintiffs' complaints are immediately distinguishable from the complaints in *Robbins* and *Brown* because Plaintiffs have not used the broad term "Defendants" in stating the actor. Rather, they occasionally list specific individuals, which is far more narrow than a general allegation against all of the defendants. In addition to limiting those defendants which are alleged as having participated in the action, the list generally involves the same type of defendants, such as a group of corrections officers or administrators. (*See, e.g.* Doc. 43 at 16 ("Estavillo, Eaton, Smith, Chavez, and/or Ortega")), or those in charge of the detention facility (*see e.g.* Doc. 43 at 21 ("Sierra County, by and through Cherry and/or Carrejo")). The *Robbins* court was concerned with the problem of using "defendants" when the term included individuals and municipal entities. This concern is not present here since the lists always include the same class of defendants.

The key inquiry in evaluating the viability of a complaint under Rule 8(a)(2) is whether each defendant knows why he or she was named in the complaint. In *Robbins*, the pleader made broad allegations against all of the defendants, never specifying who was involved in what action or violation. Here, Defendants have notice since the allegations that do involve "and/or" are tailored to the individual claims. For example, Defendant Eaton knows which individual claims

have been brought against him in Ferguson's complaint. If he did not actually participate in the alleged violation, then he will be able to present such evidence either at summary judgment or at trial. However, he has direct notice of the conduct for which he is being considered liable.

Additionally, there is a practical reason to deny the motion to dismiss on this ground. Ferguson and Parkin allege that they received constitutionally deficient medical care during incarceration. Their claims involve the repeated request for medical care or supplies from a number of correctional officers over an extended period of time. I doubt that Ferguson or Parkin could have remembered precisely to whom they complained in these situations each time. Plaintiffs have not had the benefit of discovery at this stage, so I cannot expect this level of detail.

Because I believe that Defendants have fair notice of the claims against them, and because discovery will further reveal precisely which of the named Defendants participated in the specific actions, I deny Defendants' motion to dismiss on this ground.

## III. Failure to Plead Facts to Support Eighth Amendment Claim

Defendants next attack the sufficiency of each individual complaint by arguing that Plaintiffs do not allege that the corrections officers acted with deliberate indifference to serious medical needs. (Doc. 61 at 8.) The state has a responsibility to provide medical, dental, and psychological care to inmates and pretrial detainee under the Constitution.[7] *Ramos v. Lamm*, 639

---

[7] Plaintiffs bring their claims under both the Eighth and Fourteenth Amendments. (Doc. 43 at 2; Parkin 11cv1080 Doc. 30 at 2.) They state that they were at SCDF while either pretrial detainees or inmates. Although not explicitly stated, Plaintiffs presumably bring their claims under both amendments because the Fourteenth Amendment's Due Process Clause governs the degree of medical protection afforded to pretrial detainees, while the Eighth Amendment governs the degree of protection for convicted inmates. *See Barrie v. Grand County*, 119 F.3d 862, 867 (10th Cir. 1997) (quoting *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992)). The vehicle with which to bring such claims differs depending on the nature of an inmate's incarceration, but the substantive standard of deliberate indifference remains the same for both an Eighth and a Fourteenth Amendment claim. *Id.* Accordingly, I will discuss Plaintiffs' Eighth and Fourteenth Amendment claims as the same, since they require the exact

F.2d 559, 574 (10th Cir. 1980). A claim for the unconstitutional denial of medical care will be successful if the plaintiff pleads facts to establish objective and subjective components. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component requires that the deprivation or medical need be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). Pain alone may be also be considered sufficiently serious, but the "'pain' associated with an Eighth Amendment violation 'means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.'" *See Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991) (quoting *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983)); *accord Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 735 (10th Cir. 2005) (unpublished).

When a prisoner complains about a delay in medical treatment, he or she must also demonstrate that the delay caused substantial harm, such as a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). However, when the complaint pertains to the outright denial of medical treatment, the plaintiff need not demonstrate substantial harm. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315-17 (10th Cir. 2002) (omitting discussion of substantial harm when plaintiff was denied medication); *Riddle v. Mondragon*, 83 F.3d 1197, 1202-04 (10th Cir. 1996) (omitting discussion of substantial harm when plaintiffs allege denial of psychological treatment).

---

same constitutional analysis. Any reference to an Eighth Amendment claim in this order includes the analogous Fourteenth Amendment claim.

The subjective component concerns whether the defendant knew of and disregarded an excessive risk to the inmate's health or safety by failing to take reasonable measures to abate it. *Beggs*, 563 F.3d at 1089; *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). This component is "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). The inadvertent failure to provide medical care or an act of mere negligence does not violate the Eighth Amendment. *Callahan*, 471 F.3d at 1159 (citations omitted); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842 (internal citations omitted). When prison staff deliberately interferes with access to treatment, delays treatment, or refuses to fulfill a gatekeeper role, then that staff member may be held liable. *Mata*, 427 F.3d at 751; *see also Estelle*, 429 U.S. at 104-05; *Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs*, 374 F. App'x 821, 828 (10th Cir. 2010) (unpublished).

Defendants argue that the facts alleged in the complaints fail to identify a particular defendant, show that the particular Plaintiff had a sufficiently serious medical condition, or demonstrate that the Defendant acted with deliberate indifference toward that inmate's serious medical need. A careful review of the complaints reveal that some of the claims are deficient and must be dismissed with prejudice.[8]

---

[8] An order granting a motion to dismiss is considered a ruling on the merits, so the claims are dismissed with prejudice. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *Lujan v. Dreis*, 414 F. App'x 140, 143 (10th Cir. 2011) (unpublished).

**A. Ferguson 11cv1001[9]**

On June 4, 2009, while incarcerated at SCDF, Ferguson was housed in an eighteen-man cell. (Doc. 43 at 14). Ferguson alleges that it was "known" that there was a "high level" of individuals with Methicillin-resistant Staphylococcus aureas ("MRSA") infections in that cell (*Id.* at 15.) He complained to Estavillo, SCDF's medical officer (*see id.* at 9), "regarding the rampant and untreated MRSA infections," but Estavillo ignored his complaints (*id*. at 14-15).

Shortly after being placed in the cell, Ferguson developed a hard "pimple" on his thigh, which he claims started "'eating' his flesh and grew in size to approximately two inches." (*Id.*) He made numerous complaints and requests for medical care, but he did not receive medical attention. (*Id.*) After several days, Ferguson started "experiencing 'major' headaches," and he complained to Estavillo, Eaton, Wilson, Smith, Chavez, and Ortega but was dismissed as a "malingerer." (*Id.*) Ferguson's headaches worsened, and for two months he continued to complain to the aforementioned correctional officers about his condition but was denied medical attention. (*Id.*)

Ferguson alleges that he was transferred to another facility in retaliation[10] for his complaints, and he returned to SCDF several months later. (*Id*. at 16). Upon his return, Ferguson

---

[9] Ferguson and Parkin provided numbered counts in their complaints, but they do not include any of the Eighth Amendment claims against individual corrections officers. In their response brief, Plaintiffs suggested re-numbering the counts in proposed amended complaints. (Doc. 67 Ex. 1.) However, the proposed numbering fails to take into account the different actionable events and are organized by Defendant and not by event. Therefore, I have re-numbered Plaintiffs' claims for the purpose of deciding this motion. I will refer to them as Claim One, Claim Two, et al., for the sake of clarity.

I have re-numbered Ferguson's claims as follows: (1) unconstitutional conditions of confinement; (2) delay in medical care for MRSA infection; (3) denial of prescription medication; (4) supervisory and municipal liability for unsanitary facilities; (5) supervisory and municipal liability for inadequate number of medical personnel; (6) supervisory and municipal liability for failure to respond to medical complaints; and (7) supervisory and municipal liability for failure to provide medications. I have grouped the supervisory and municipal liability claims together, despite the fact that there are different legal requirements for liability, because they rest on the same facts and are written in almost identical fashion. Since I will ultimately dismiss all supervisory claims, I do not believe my numbering will result in any confusion.

resumed his complaints to Estavillo, Eaton, Wilson, Smith, Chavez, and Ortega regarding his headaches. On July 15, 2009,[11] Ferguson was taken to the University Medical Center of El Paso and diagnosed with a MRSA infection. (*Id*.) The infection had migrated to his brain, and he underwent a surgical procedure which removed the infection by removing a portion of his brain matter. (*Id*.) Ferguson claims that he has permanent impairment of his neural functions as a direct result of the infection and subsequent surgery. (*Id*.)

While at SCDF, Ferguson was provided dental care. (*Id*. at 17.) He was prescribed medications after a dental examination, but he never received his medications despite repeated complaints to Estavillo, Eaton, and Ortega. (*Id*.)

*Claim One: Unconstitutional Conditions of Confinement*

Defendants begin their attack by stating that Ferguson's claim that he was placed in a cell with inmates infected with MRSA is erroneous since complaints about infections in others are not actionable. (Doc. 61 at 11.) This is correct to the extent that Ferguson may not bring a complaint regarding the medical care provided for other inmates. However, an inmate may bring a conditions of confinement claim under the Eighth Amendment if he can show that "(1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2)

---

[10] Although Ferguson specifically mentions that the corrections officers "retaliated" against him for complaining about his medical condition, I will not consider this as a separate claim. Retaliation claims must be brought under the First Amendment, *see Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007), and Ferguson's complaint only raises violations of the Eighth and Fourteenth Amendment. The motion to dismiss and Plaintiffs' response brief do not mention any First Amendment case law, indicating that this claim was never contemplated. While courts are required to liberally construe the pleadings of pro se parties, the complaints and the response brief were drafted by legal counsel, so I am not bound to apply the rules of liberal construction. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Therefore, I will not construe this as a retaliation claim.

[11] I am suspicious as to whether this date is correct, since Ferguson alleges that many months had passed between first being placed in the eighteen-man cell and his treatment at the hospital. (Doc. 43 at 14-16.) However, the inaccurate date will not impact my analysis, and I will accept that months passed while he complained.

14

prison officials acted with deliberate indifference to inmate health or safety." *Despain v. Uphoff*, 264 F.3d 965, 971 (10th Cir 2001) (citations and internal quotations omitted); *see also Helling v. McKinney*, 509 U.S. 25, 29-30 (1993).

In *Helling*, the Supreme Court held that exposure to environmental tobacco smoke in prison states an Eighth Amendment cause of action even when an inmate is asymptomatic because the health risk posed by involuntary exposure to second-hand smoke was "sufficiently imminent." *See* 509 U.S. at 35. The Tenth Circuit interpreted *Helling* to include an Eighth Amendment cause of action for unconstitutional conditions of confinement when an inmate is exposed to contagious diseases. *Loftin v. Dalessandri*, 3 F. App'x 658, 662-63 (10th Cir. 2001) (unpublished) (holding inmate properly alleged an Eighth Amendment violation where he claimed to be held in a four-man cell where two of the other inmates had tuberculosis).

Ferguson challenges the conditions of his confinement under the Eighth Amendment by alleging that Estavillo knowingly placed him in a cell that contained a high rate of MRSA infections. (Doc. 43 at 14-15.) He also mentions this claim in his response brief. (Doc. 67 at 5.) However, Defendants' motion to dismiss only discusses Ferguson's Eighth Amendment medical claims and ignores the claim for unconstitutional conditions of confinement. While the substance of this claim has been unchallenged, I will nonetheless consider whether Ferguson has properly alleged a violation since I will ultimately have to make this inquiry when I address Defendants' qualified immunity arguments.

MRSA is a contagious disease, much like tuberculosis, which was the disease at issue in *Loftin. See MRSA Infections: Causes of MRSA Infections*, CENTERS FOR DISEASE CONTROL AND PREVENTION (August 9, 2010) http://www.cdc.gov/mrsa/causes/index.html. The allegations that MRSA was "known" to be "rampant" and was left "untreated" in the cell meets the first prong

that conditions of confinement be sufficiently serious to implicate protection. (Doc. 43 at 14-15.) Ferguson specifically complained to Estavillo about the presence of untreated MRSA infections, but Estavillo did nothing. The allegation that Estavillo took no action to remedy the situation to limit Ferguson's exposure to the disease sufficiently meets the deliberate indifference prong of a conditions of confinement claim.

> *Claim Two: Delay in Care for MRSA Infection*

Defendants concede that a MRSA infection is a serious medical condition. (Doc. 61 at 12.) They do not address whether Ferguson suffered substantial harm as the result of the delay in treatment, but I find that Ferguson has more than adequately pled this element by pleading he now has permanent impairments in his neural functions.

Defendants only challenge the sufficiency of the subjective prong, and they argue that pimples and headaches alone do not seem intuitively serious, so the corrections officers would not have inferred that Ferguson was suffering from an objectively serious condition. In support of their reasoning, Defendants point to an unpublished Tenth Circuit opinion which states that "most skin conditions are not intuitively serious" in order to minimize the presence of the pimple on his thigh. (*Id*. at 13 (quoting *Stepnay v. Goff*, 164 F. App'x 767, 770 (10th Cir. 2006) (unpublished)).) They also cite a rule published in the Federal Register by the Department of Labor interpreting the Family Medical Leave Act that states that headaches are not a serious medical condition. *See* 29 C.F.R. § 825.113.

This argument is not only unavailing, but it also misinterprets and misrepresents the law. I turn first to their reliance on *Stepnay,* which discusses skin conditions. In *Stepnay,* an inmate sued the Kansas Department of Corrections for constitutionally deficient treatment of his MRSA infection. *See* 164 F. App'x at 768-69. The defendants had taken the inmate to three different

health care providers, but none of them properly diagnosed his condition, so he suffered permanent scarring and lived with a risk that the infection would re-occur. *Id.* at 769. The Tenth Circuit noted that "most skin conditions are not intuitively serious" in its assessment of the objective component, but this was not the end of its analysis. *Stepnay* further explained

> [B]ecause we can at least imagine some skin conditions that are sufficiently serious, *and drug resistant infections in a prison context might certainly be in that context*, Mr. Stepnay may only avoid dismissal by alleging specific facts indicating his condition at the conclusion of his ten-day course of antibiotics was so obvious that Defendants should have recognized that it required a referral for follow-up care.

*Id.* at 770 (emphasis added).

Turning to the subjective component, the court considered that the defendants took the inmate to see three health care providers and held that it "[cut] against his contention and affirmatively [suggested] that Defendants were not indifferent to his medical needs." *Id.* While the *Stepnay* court ultimately found that the inmate failed to properly allege an Eighth Amendment violation, the defect did not lie merely in the fact that the inmate's ailment presented as a skin condition. In fact, *Stepnay* shows that a correction officer's knowledge that an inmate has a skin condition, when coupled with other factors, can meet the pleading requirements for the subjective prong in an Eighth Amendment claim.

Returning to the present matter, Ferguson's "pimple" must be read in conjunction with the following facts: (1) Ferguson complained to Estavillo specifically about the prevalence of MRSA infections in his cellmates; (2) Ferguson complained for two months of severe headaches to Estavillo, Easton, Wilson, Smith, Chavez, and Ortega; and (3) he continued to complain of headaches after having left the facility for a number of months. Admittedly, the facts at bar differ from the facts suggested by the *Stepnay* Court. Ferguson's core health concern was his persistent and escalating headaches, not a skin infection that persisted despite antibiotic treatment.

However, I discuss *Stepnay* to show that Ferguson's claim for a delay in care for a MRSA infection cannot be summarily dismissed because it presented, in part, as a skin infection.

The fact that Ferguson suffered from headaches for several months is arguably the most salient symptom. This circuit has held that an inmate's persistent complaints of severe pain for several months to a correctional officer sufficiently states a cause of action. *Halpin v. Simmons*, 33 F. App'x 961, 965 (10th Cir. 2002) (unpublished) (holding in part that an inmate who has alleged a serious gastrointestinal problem sufficiently alleged an Eighth Amendment claim by alleging that he complained of severe stomach pains for several months but was ignored). *But cf. Stafford v. Stewart*, 461 F. App'x 767, 770 (10th Cir. 2012) (holding complaints of headaches and dizziness from an inmate with high blood pressure could not meet subjective prong because she did not state the frequency or content of her complaints to defendant).

Defendants attempt to minimize Ferguson's headaches. They cite a rule promulgated by the Department of Labor that interprets provisions of the Family Medical Leave Act, an entirely inapplicable statute, which states that headaches are not serious health conditions. (Doc. 61 at 13 (citing 29 C.F.R. § 825.113(d) (2011)).) The Department of Labor's interpretation of a statute has no bearing on this action, but I will briefly discuss it insofar as to explain why citation to this rule undermines Defendants' proposition. Defendants selectively quoted the rule in their brief, but it states in pertinent part that "ordinarily, *unless complications arise*, . . . headaches other than migraine . . . are examples of conditions that do not meet the definition of a serious health condition." 29 C.F.R. § 825.113(d) (emphasis mine). Months of sustained, worsening headaches might count as a complication.

Ferguson complained not just of headaches, but of severe, escalating headaches for two months. After being gone from SCDF for months, he returned and continued to complain of

headaches. Although a headache or a skin infection alone would not be enough to place Defendants on notice of the severity of his condition, his continual complaints over a period of months are sufficient to establish for the purpose of a Rule 12(b)(6) motion that Estavillo, Eaton, Wilson, Smith, Chavez, and Ortega drew the inference that there was a risk of serious harm. Although only Estavillo initially received complaints regarding Ferguson's allegedly MRSA-infected cellmates, Defendants' decision to ignore his complaints regarding his headaches alone make it plausible that all six acted with deliberate indifference to Ferguson's serious medical needs.

*Claim Three: Denial of Prescription Medication*

Ferguson's third claim is that Estavillo, Eaton, and Ortega denied him medications prescribed to him after a dental examination. (Doc. 43 at 17.) The outright denial of prescribed medication can substantiate an Eighth Amendment claim when the medication is used to treat a previously diagnosed illness or condition. *See Van Ripper v. Wexford Health Sources, Inc.*, 67 F. App'x 501, 504 (10th Cir. 2003) (unpublished) (holding that the denial of prescribed medication to treat an inmate's GERD and COPD can be a constitutional violation); *Olsen*, 312 F.3d at 1316 (holding plaintiff pled an constitutional violation when he claimed he was denied prescribed medication for panic attacks and he had been diagnosed with obsessive compulsive disorder); *Halpin,* 33 F. App'x at 964-65 (holding defendants' refusal to provide medications prescribed to inmate by a cardiologist for his heart condition was sufficient to allege an Eighth Amendment claim); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (holding allegations of denial of insulin to diabetic inmate properly pled constitutional violation); *see also Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996) (holding a prison's refusal to provide a specific treatment to inmates with undiagnosed mental conditions is not a constitutional violation). In the cited cases,

the denial of prescribed medications met both the objective and subjective components of the inquiry.

Here, presumably a dentist, although this is uncertain, prescribed Ferguson medication after an exam. While the type of medication is unspecified as is the reason for its prescription, I must make all reasonable inferences in Ferguson's favor at this stage. I may infer that because the dentist prescribed medication after a dental exam, Ferguson had some manner of medical condition which mandated treatment. This satisfies the objective prong at this stage. The outright denial of treatment, contrary to the orders of a medical professional meets the subjective prong. Accordingly, Ferguson has properly pled a constitutional violation for the denial of prescription medications.

### B.  Parkin 11cv1080[12]

On August 18, 2010, Parkin twisted his ankle while getting down from his top bunk. (Parkin 11cv1080 Doc. 30 at 17.) He reported his injury and was assigned a bottom bunk. (*Id.*) Three days later, his ankle had become visibly swollen and hot to the touch; he filed a medical request and complained that he was suffering from severe pain and limited mobility. (*Id.* at 18.) That night, Parkin was transported to the hospital. (*Id.*) His ankle was not fractured, but the healthcare provider taped his ankle, prescribed him ibuprofen, gave him crutches, and instructed him to keep his ankle elevated and continually iced for several days. (*Id.*) Parkin was given icepacks for this purpose. (*Id.*)

---

[12] I have re-numbered Parkin's claims as follows: (1) denial of medical supplies; (2) denial of medications; (3) delay in medical care for ankle; (4) denial of follow-up care for ankle; (5) supervisory and municipal liability for inadequate number of medical personnel; (6) supervisory and municipal liability for failure to provide medications and supplies; (7) supervisory and municipal liability for failure to follow-up with referrals; and (8) supervisory and municipal liability for failure to respond to requests for medical care.

Upon his return to SCDF, Parkin was denied treatment as prescribed by his health care provider. He only received ice packs five times in four days, he was not given ibuprofen for several days, and he was not given additional supplies with which to elevate his ankle for several days. (*Id*.) Parkin's injured ankle eventually turned a "reddish-purple" color, and the discoloration spread down his ankle to his toes and up to his knee. (*Id*.) Parkin complained about the pain and the discoloration to Estavillo, Eaton, Wilson, Smith, Goodwin, Hopkins, Apodaca, and/or Lucero, and he repeatedly asked to return to the hospital to no avail. (*Id*. at 19.) One unidentified corrections officer did comment that it looked as if something was "seriously wrong" with Parkin's leg and that he needed immediate medical attention. (*Id*.)

On August 25, 2012, the skin on Parkin's leg ruptured because of the swelling, discharging blood and pus. (*Id*.) Parkin immediately requested further medical attention from Estavillo, Eaton, Wilson, Smith, Goodwin, Ortega, Hopkins, Apodaca, and/or Lucero, but his complaints were again ignored. (*Id*. at 20.) Parkin resorted to contacting relatives and requesting that they contact SCDF on his behalf. (*Id*.)

After contacting his relatives, Parkin was ultimately taken to the hospital, where he remained for five days. (*Id*.) Upon his discharge from the hospital, he was prescribed multiple return visits for daily treatment and medications, and he was referred to a bone specialist and to a physical therapist. (*Id*.) Parkin was never transported back to hospital for follow-up care, and he never saw a bone specialist or physical therapist. (*Id*. at 20-21). Parkin repeatedly complained to the aforementioned corrections officers about the denial of his prescribed treatment, and he requested additional medical care, but his complaints and requests were ignored. (*Id*. at 21.) Parkin alleges that as a direct result of the denial of medical care he suffered permanent injury and scarring to his leg, and he now walks with a limp. (*Id.*)

*Claims One & Two: Denial of Medical Supplies & Prescribed Medications*

After twisting his ankle, Parkin was instructed to ice his ankle five times a day and to elevate his ankle, and he was prescribed ibuprofen for the pain. Parkin omits any mention of which officer denied him these supplies or whom he asked for the supplies, so I must dismiss his first two claims.

*Claim Three: Delayed Treatment for Infected Ankle*

Parkin's allegations regarding the severity of his ankle infection satisfy the objective component at this stage. After five days in the hospital, Parkin was prescribed multiple courses of treatment: follow-up visits, medications, physical therapy, and a referral to a bone specialist. While Parkin does not specify the exact underlying nature of his infection, the multiple treatments prescribed indicates that the underlying infection and injury were sufficiently serious, thus meeting the objective prong. *See Garden*, 430 F.3d at 1304 (finding a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment). He also sufficiently alleges that the delay in care resulted in substantial harm by stating that he has a permanent injury to his leg and walks with a limp. *Garrett*, 254 F.3d at 950 (holding that a permanent loss or handicap constitutes substantial harm). Lastly, I believe that the subjective prong can be inferred because the facts, as alleged, show that his need for medical care was so obvious that even a lay person would have recognized it. His ankle was visibly infected, as noted by the fact that it was swollen, hot, discolored, and it eventually ruptured. The fact that Parkin still had to implore relatives to contact the prison on his behalf in the face of an obvious injury make it plausible that Estavillo, Eaton, Wilson, Smith, Goodwin, Ortega, Hopkins, Apodaca, and Lucero acted with deliberate indifference.

*Claim Four: Denial of Follow-up Care for Ankle*

Defendants only address whether the denial of physical therapy can substantiate the objective prong, and then generally assert that Parkin has not shown facts to support the subjective prong of this claim. (Doc. 61 at 30.) I disagree. As previously discussed, Parkin's ankle injury constitutes a serious medical need under the objective prong. Moving on to the subjective prong, Parkin has shown deliberate indifference when his prior medical history has been taken into consideration. In *Rutherford v. Medical Department of the Department of Corrections*, 76 F. App'x 893, 902 (10th Cir. 2003) (unpublished), the Tenth Circuit held that an inmate sufficiently pled an Eighth Amendment deliberate indifference claim by alleging corrections staff failed to provide follow-up care for his herniated disc. *Rutherford* denied summary judgment because allegations of "inaction" such as "allowing authorization for consultations to expire and permitting delays in arranging for consultations, MRIs, follow-up appointments, and scheduling and transporting [the plaintiff] for surgery . . . could be determined to be unreasonable and indicative of deliberate indifference." *Id.* at 899.

Parkin repeatedly requested medical care from Estavillo, Eaton, Wilson, Smith, Goodwin, Ortega, Hopkins, Apodaca, and/or Lucero for his ankle. As a result of this persistent inaction on the part of these Defendants, Parkin spent five days in a hospital. At this point, it would be obvious to a lay person that Parkin's ankle condition was serious and he was not malingering. Parkin's hospitalization did not seem to have the desire impact, though, since the same corrections officers allegedly disregarded not some, but all of the prescribed follow-up care for his ankle. This inaction could be determined to be indicative of deliberated indifference.

**IV.      Failure to State a Claim of Supervisory Liability Against Porter-Carrejo & Cherry**

In addition to bringing claims against the individual correctional officers, Plaintiffs bring supervisory liability claims under § 1983 against Porter-Carrejo, the Sierra County Manager, and Cherry, the Administrator of SCDF. Ferguson brings supervisory liability claims for failure to maintain a sanitary environment, maintain an adequate number of medical personnel, respond to medical complaints, and provide prescription medications and medical supplies. (Doc. 43 at 19, 28, 36, 44.) Parkin alleges that Porter-Carrejo and Cherry are liable for failure maintain an adequate number of medical personnel, respond to medical complaints, provide prescription medications and medical supplies, and follow prescribed follow-up care instructions and treatment. (Parkin 11cv1080 Doc. 30 at 23, 30, 39, 48.) The language of the supervisory liability claims in the two complaints are virtually identical. Given the similarity of the claims, I will consider them collectively.

### A.   Official Capacity Claims are Moot

Although the wording of the complaints leave room for speculation, it appears as if the Plaintiffs have sued Porter-Carrejo and Cherry in both their individual and official capacities.[13] Before discussing the sufficiency of Plaintiffs' supervisory liability claims, I must address the distinction between official versus individual capacity claims and explain why Plaintiffs' official capacity § 1983 claims against Porter-Carrejo and Cherry are moot.[14]

---

[13] Plaintiffs begin their complaints by alleging that the specified constitutional violations were carried out by the "defendants in their official capacity"; later, they state that Porter-Carrejo and Cherry were acting in their individual capacities. (*See* Doc. 43 at 2, 4, 7; Parkin 11cv1080 Doc. 30 at 2, 4, 7.) Further, many of the claims state that the County acted "by and through Cherry and/or [Porter-] Carrejo." The combined effect of this language suggests that Plaintiffs have brought their suits against Porter-Carrejo and Cherry in their official and individual capacities.

[14] Defendants argue that all official capacity claims were also previously dismissed. (Doc. 61 at 45-46.) This is correct. (Doc. 42.)

The Supreme Court addressed the distinction between official and personal capacity lawsuits in *Hafer v. Melo*, 502 U.S. 21 (1991). According to *Hafer*, an official capacity suit "generally represents only another way of pleading an action against an entity of which an officer is an agent." 502 U.S. at 25 (citations omitted). Thus, a suit against a state official in his or her official capacity is treated as a suit against the state. *Id.* "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus . . . 'it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Porter-Carrejo is the county manager, and Cherry manages SCDF, which is governed by the County. Thus, the claims against Porter-Carrejo and Cherry in their official capacities are legally the same as a claim against the County. Since the Board of County Commissioners of Sierra County is a named Defendant in each complaint, the § 1983 claims against Porter-Carrejo and Cherry in their official capacities must be denied as moot.

### B.  **All Individual Capacity Claims Are Dismissed with Prejudice**

Supervisory liability under § 1983 must be based on the supervisor's involvement in the constitutional violation. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). It is insufficient to merely state a theory of respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff seeking to impose supervisory liability must show that the "supervisor's subordinates violated the [C]onstitution" and that there is an "affirmative link" between the supervisor and the constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citations omitted). The affirmative link requirement has three separate

components: (1) personal involvement; (2) a sufficient causal connection; and (3) a culpable state of mind. *Id.*

The first prong of the affirmative link inquiry, personal involvement, can be established by demonstrating the supervisor's personal participation, exercise of control or direction, failure to supervise, or knowledge of a violation and acquiescence to its continuation. *Id.* (citing *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009); *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996)). Likewise, the creation or implementation of a policy that led to the violation also meets this standard. *Id.* (citing *Meade v. Grubbs*, 841 F.2d 15, 21, 1528 (10th Cir. 1988)). However, "the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

To satisfy the second prong, the plaintiff must allege facts to show that the supervisor "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id*. at 1195-95 (quoting *Poolaw*, 565 F.3d at 732-33.) For example, in *Poolaw,* the court held that a supervisor who ordered a search and then swore-out an affidavit for a search warrant satisfied this prong and could be held liable for an unconstitutional search. 565 F.3d at 733.

At the last prong, the supervisor must act knowingly or with deliberate indifference that the violation would occur. *Serna*, 455 F.3d at 1151. Just as with Eighth Amendment jurisprudence, deliberate indifference requires more than simple negligence. *Id*. at 1151-52 (citations omitted).

Defendants argue that Plaintiffs have failed to properly allege supervisory liability claims against Porter-Carrejo and Cherry. (Doc. 61 at 35.) Defendants move to dismiss all of the supervisory liability claims against Porter-Carrejo and Cherry on four grounds. First, they claim

that the complaints fail to identify the constitutional violations through which they seek to hold the supervisors liable, and that this renders the complaints defective. (Doc. 61 at 37.) While it is clear that the organization of the complaints fails to make this link, it does not require a great deal of mental strain to connect the dots between the supervisory liability claim and the underlying violation. This alone is not grounds for dismissal.

Defendants' second argument raises, again, the use of "and/or" which I have already rejected. Third, Defendants believe that the claims are conclusory and formulaic recitations of the legal standard. (Doc. 61 at 37-38.) In addition, Defendants claim that Plaintiffs have failed to allege that Porter-Carrejo or Cherry acted with the requisite state of mind. (*Id.* at 38.) Defendants have summarily raised theses arguments and have not analyzed the particular cases in detail (Doc. 61 at 35-38); Plaintiffs responded in kind and summarily disagree (Doc. 67 at 15-16). I, too, will discuss this issue in a summary fashion since, as will be discussed, the language and legal defects of each complaint are sufficiently similar.

While there are often multiple reasons to dismiss some of the claims, such as a failure to allege an underlying constitutional violation, all of the claims fail to allege facts to establish the personal involvement prong of a supervisory liability claim. Each category of claim is alleged in multiple ways, such as by stating different theories of personal involvement, including that Porter-Carrejo and Cherry participated in the alleged violation by taking direct action to discourage remedying the alleged constitutional violation, failing to supervise the corrections officers, and ignoring complaints regarding the constitutional violation. However, in every case, these allegations amount to nothing more than bland accusations against Porter-Carrejo and Cherry. *See Twombly*, 550 U.S. a 555. As previously stated, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,*

27

556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Plaintiffs assert that Porter-Carrejo and Cherry took specific actions, but they fail to state the nature of those actions, or how they led to the constitutional violation. Plaintiffs claim that Porter-Carrejo and Cherry ignored complaints, but neither allege that they directly complained to or contacted Porter-Carrejo or Cherry. Similarly, they claim that Porter-Carrejo and Cherry issued acts or edicts concerning the various constitutional violations, but neither complaints describes any acts or edicts made by the two Defendants.

This defect is repeated throughout every count of supervisory liability. In the one hundred thirteen pages that make up the two amended complaints, Plaintiffs spend innumerable paragraphs articulating the legal standards for supervisory liability, but they do not provide a single fact to link either Porter-Carrejo or Cherry to the specific constitutional violations alleged in factual section of the complaints. In fact, neither complaint mentions these two Defendants in the factual portion of the complaints.

Plaintiffs' response brief provides little support for denying the motion to dismiss; in fact, their arguments are no more than generalized recitations of law unsupported by particularized facts. (Doc. 67 at 15-16.) Plaintiffs essentially argue that because Porter-Carrejo was the "final decision maker" she was responsible for the "policies" or "customs" that led to the alleged constitutional violations. (*Id.* at 15.) They also address the personal involvement prong, in that they restate the legal standard. The response contains absolutely no analysis pointing to any fact that would demonstrate Porter-Carrejo's personal involvement in either case. Such an analysis reads as a respondeat superior claim, since, absent facts to show the affirmative link, Plaintiffs have merely produced a description of a supervisory relationship. *Poolaw*, 565 F.3d at 732 ("[A]

supervisory relationship alone is insufficient for liability under § 1983."); *Fogarty*, 523 F.3d at 1162 (holding authority over individuals who committed violation is insufficient for liability.)

Plaintiffs make the same rebuttal on behalf of Cherry. They note that "Plaintiffs have pled that John Cherry, as administrator of the SCDF was responsible for the implementation of policies" and that he "knew of the failures and deficiencies." (Doc. 67 at 16.) Plaintiffs cite law to support the legal standard but again fail to state a fact to show Cherry's personal involvement in either case.

Given the insufficiency of the complaints and the failure to point to facts that show Porter-Carrejo's or Cherry's involvement in a single alleged constitutional violation, I dismiss all claims brought against these Defendants in their individual capacities with prejudice.

## V.     Failure to State a Claim Against the County[15]

It is well settled that local governments, such as counties, and corporate defendants may not be held liable under a respondeat superior theory in a § 1983 case. *Monell*, 436 U.S. at 690-91 (1978); *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 722 (10th Cir. 1988) (citations omitted). Plaintiffs seeking to impose § 1983 liability on a local government or corporate defendant[16] must first establish that an underlying constitutional violation occurred,[17]

---

[15] I have combined Defendants' fifth and six arguments for dismissal in this section. (*See* Doc. 61 at 39.)

[16] If a corporation contracts with a county to operate the county's detention center, both the county and the corporation may be held liable when the corporation promulgates an unconstitutional policy that injures the plaintiff. See *Herrera v. Cnty. of Santa Fe*, 213 F. Supp. 2d 1288, 1292 (D.N.M. 2002).

[17] Even if the individual actor who committed the violation is absolved of liability under the doctrine of qualified immunity, the municipality may still be found liable. *Owen v. City of Independence*, 445 U.S. (1980) (holding a municipality is not shielded from liability because a municipal officer had successfully established he was entitled to qualified immunity).

*see Olsen*, 312 F.3d at 1317-18, and second that a custom or policy caused their injuries, *see Simmons*, 506 F.3d at 1284.

A plaintiff may establish a custom or policy by showing that an officially promulgated policy, a custom or persistent practice, or deliberately indifferent training or supervision caused the violation. *See Herrera*, 213 F. Supp. 2d at 1290 (citing *Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 855 (10th Cir. 1993); *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1129 (10th Cir. 1993)); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998) (discussing § 1983 claims for inadequate training and hiring decisions).

As the name suggests, an officially promulgated policy "generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). However, if the plaintiff alleges that the violation stemmed from a custom that was so widespread that it was a de facto policy, then the plaintiff does not need to show that the custom was formally adopted. *Monell*, 436 U.S. 690-91. In fact, a widespread practice will satisfy this element for municipal liability even when the municipality has a contrary written formal policy. *See Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307-08 (10th Cir. 1985) (holding county liable for constitutional violation based on the custom of the jail even though the custom was in violation of the county's written policy).

Unlike a plaintiff's claim of deliberate indifference against an individual, for the plaintiff to allege that there was an unconstitutional custom or policy, generally speaking, alleging facts of "a single incident of unconstitutional conduct is not enough." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1170 (10th Cir. 2009). Rather, the plaintiff must show a "pattern of abuses" to support a claim against a municipality. *Brown v. Reardon*, 770 F.2d 896, 901 (10th Cir. 1985) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981)). However, in rare situations,

"deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action." *Olsen*, 312 F.3d at 1318 (internal quotations omitted).

Municipal liability may also be based on a municipality's deliberately indifferent training that is directly related to the underlying violation of a constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Supreme Court explained in *Canton* that, in order to satisfy *Monell*'s prohibition against respondeat superior claims, the plaintiff may not only allege that "the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *Id.* The core question is

> whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.' It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390.

Whether the basis of the plaintiff's claim is of an official policy, a custom or practice, or deliberately indifferent training, supervision, or hiring, the plaintiff must still show the element of causation. The policy or practice must be the "moving force" behind the constitutional violation. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

I consider first the threshold matter, which is that a county may only be liable when the plaintiff has alleged an underlying constructional violation. To the extent that I have dismissed

any of the Plaintiffs' claims for failure to allege an Eighth Amendment violation, the municipal liability claims premised on those violations are also dismissed.

## A. **Ferguson 11cv1001**

Ferguson alleged three constitutional violations by individual actors: Claim One, unconstitutional conditions of confinement; Claim Two, delay in medical care for his MRSA infection; and Claim Three, denial of prescription medication. He alleged an additional four municipal liability claims against the County: Claim Four, unsanitary facilities; Claim Five, inadequate number of medical personnel; Claim Six, failure to respond to medical complaints; and Claim Seven, failure to provide medications.

### *Claim Four: Unsanitary Facilities*

Although I found that Ferguson properly alleged a claim for unconstitutional conditions of confinement in his first claim, this alleged violation does not sufficiently correlate with his fourth claim, which is municipal liability for unsanitary conditions. Ferguson never alleged that he was kept in an unsanitary cell; his first claim was that he was kept in a cell with individuals with MRSA. Since he has not alleged a claim that he was kept in unsanitary conditions, I must dismiss Claim Four.

### *Claim Five: Inadequate Number of Medical Personnel*

I also dismiss Claim Five for failure to state an underlying constitutional violation. Claim Five, inadequate number of medical personnel, is meritless because Ferguson did not allege an underlying constitutional violation that was caused by a lack of available medical personnel.

### *Claim Six: Failure to Respond to Requests for Medical Attention*

Ferguson's remaining municipal claim, Claim Six, is that the County is liable for failing to properly respond to inmates' requests for medical attention. Ferguson sufficiently pled facts to

allege that Estavillo, Eaton, Wilson, Smith, Chavez, and Ortega acted with deliberate indifference when they failed to respond to Ferguson's complaints regarding his skin condition and headaches, which ultimately resulted in his severe MRSA infection. This meets the standard of showing an underlying constitutional violation. He also pleads alternative theories of liability to support a claim that the County is responsible for this violation. This includes a rote recitation of legal standards, including that there was: (1) an official policy directing SCDF staff to ignore medical requests (Doc. 43 at 35); (2) a custom or practice of ignoring medical requests (*id.* at 37); (3) a failure to adopt a policy concerning responding to medical requests (*id.* at 39); and (4) a failure to supervise staff (*id.* at 40).

Each of Ferguson's four theories of municipal liability suffer from the same defect as his supervisory liability claims—his complaint lacks a single fact that supports any of the theories. Absent particularized facts to support his recitation of the legal standards, I must grant Defendants' motion to dismiss his municipal liability claim.

However, my inquiry does not end here. Ferguson's complaint does not sit in isolation; it is one of eight original consolidated cases. Collectively, all eight complaints pled facts that show that there was a widespread custom or practice of corrections officers ignoring the medical requests of inmates. While I decline to recite the factual basis of the other complaints, my review of all eight complaints reveals that this was a distinct theme. Given the content of the other seven complaints, I must decide how to treat those alleged facts in determining whether Ferguson has pled facts to support a municipal liability claim. This inquiry is further complicated by the fact that six of the eight cases have been dismissed and are no longer before this Court.

I begin with basic logic. Procedurally, the act of consolidation grouped these complaints together because they shared common issues of fact an law. As a result, I originally read all eight

complaints together, and collectively they painted a picture of the repeated and regular denial of basic medical care to inmates at SCDF. However, the rule governing consolidation muddies my ability to apply the information gleaned from one case in another case. Consolidation is appropriate when there is a common question of law or fact. FED. R. CIV. P. 42(a). However, because the goal of consolidation is to promote convenience and economy only, a consolidated case and its claims still remain separate and distinct. *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 496-97 (1933). The court must still rule on the merits of each individual claim. *Horizon Asset Mgmt. v. H&R Block, Inc.*, 580 F.3d 755, 769 (8th Cir. 2009).

I am left to weigh the logical implications of consolidating eight complaints against the legal requirement that the claims remain separate. I conclude that I cannot use the facts in the other seven complaints to support an allegation of municipal liability based on a custom or practice. However, I also cannot ignore the fact that the consolidated cases effectively pled that such a practice exists. Thus, I will compromise. I will permit Ferguson to amend his complaint only with respect to his municipal liability claim for ignoring medical requests, and I will deny the motion to dismiss with respect to this claim.

*Claim Seven: Failure to Provide Medications*

The underlying constitutional violation in support of Claim Seven is Claim Three, failure to provide prescription medication after a dental appointment. While Ferguson's complaint alleges facts to show that requests generally go ignored, it has only provided one instance in which SCDF staff outright denied prescribed medication to an inmate. On its own, this is insufficient for alleging municipal liability. However, as discussed with respect to Claim Six, the eight complaints collectively allege numerous occasions in which inmates were outright denied prescription medications, which could substantiate municipal liability based on a custom or

practice. Accordingly, I will deny the motion to dismiss Claim Seven, and I will permit Ferguson to amend his complaint with respect to this claim.

**B.  <u>Parkin 11cv1080</u>**

Parkin raises the following individual liability claims: Claim One, denial of medical supplies; Claim Two, denial of medications; Claim Three, delay in medical care for his ankle; and Claim Four, denial of follow-up care for his ankle. He also raises the following municipal liability claims against the County: Claim Five, inadequate number of medical personnel; Claim Six, failure to provide medications and supplies; Claim Seven, failure to follow-up with referrals; and Claim Eight, failure to respond to requests for medical care.

*Claims Five and Six: Inadequate Number of Medical Personnel & Failure to Provide Medical Supplies*

Since Parkin has not alleged an underlying constitutional violation that resulted from an inadequate number of medical personnel, I will dismiss Claim Five. Likewise Claim Six is not supported by an underlying constitutional violations, since I dismissed Claims One and Two for failure to specify which corrections officer acted to deprive him of his medical supplies and medications.

*Claim Seven: Follow-up With Referrals*

Claim Four, the denial of follow-up care for his ankle, serves as the underlying constitutional violation for municipal liability for the failure to follow-up with referrals. Parkin's complaint has alleged facts to show that SCDF disregarded medical instructions for all of his follow-up care: corrections officers denied him ice packs for his ankle, they never returned him to the hospital for his further care for his ankle, and they never scheduled appointments with a bone specialist and a physical therapist. (Parkin 11cv1080 Doc. 30 at 18-21.) These incidents amount to a "pattern of abuses," *see Reardon*, 770 F.2d at 901, that support his claim that there

was a custom or practice of ignoring referrals and the advice of doctors regarding follow-up care. Accordingly, I find that the first prong has been met since there are facts to support the allegation that there was a custom or practice of ignoring the instructions of medical professionals for follow-up treatment and care.

Turning to the second prong, there is a sufficient causal link between Parkin's underlying violation and the policy of ignoring referrals for follow-up care. Parkin alleges that he now walks with a limp because his ankle was never properly cared for. The referrals were for a bone specialist and physical therapy, and it is logical to presume that the denial of this form of medical care impacted his ability to properly recover. Since the second prong is met, I will deny Defendants' motion with respect to Parkin's municipal liability claim for failure to follow-up with medically prescribed referrals.

*Claim Eight: Failure to Respond to Requests for Medical Care*

Claims Three and Four, delay in treatment of his ankle and denial of follow-up care for his ankle, serve as an underlying constitutional violation to support municipal liability for failure to respond to requests for medical care. For the reasons articulated in my analysis of Ferguson's municipal liability claim for failure to respond to medical requests, the consolidated cases, when viewed together, suggest that municipal liability may be based on allegations of a custom or practice. However, Parkin's complaint, standing alone, does not allege sufficient facts. Thus, I will permit Parkin to amend his complaint with respect to this claim only.

## VI.    Qualified Immunity Defense for the Individual Defendants

"Qualified immunity shields public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defendant has raised

the qualified immunity defense, the burden is on the plaintiff to show that right was clearly established. *Hilliard v. City & Cnty. of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991). To resolve a motion to dismiss based on qualified immunity, the court must determine whether the facts alleged by the plaintiff assert a violation of a constitutional right and whether the right at issue was clearly established at the time of the incident. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right is considered clearly established when there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . ha[s] found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted).

Whether a constitutional right was clearly established must be considered in light of the specifics of the case, not as a broad proposition. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). (holding that). However, the Tenth Circuit rejects a blind application of qualified immunity in the face of obvious constitutional violations. When the constitutional violation at issue requires "a fact-specific inquiry . . . 'there will almost never be a previously published opinion involving exactly the same circumstances.'" *Morris*, 672 F.3d at 1196 (quoting *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). In order to address this reality, the Tenth Circuit employs a "sliding scale" *Id*. "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*. (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

Having previously analyzed the sufficiency of Plaintiffs' individual allegations, I will now consider whether the right at issue was clearly established at the time of the incident in order to determine whether the offending officers were entitled to qualified immunity.[18]

### A. Ferguson 11cv1001

*Claim One*: *Conditions of Confinement*

Ferguson properly alleges a claim for unconstitutional conditions of confinement by stating that he was held in an eighteen-man cell when there were known high levels of MRSA and that Estavillo refused to act despite Ferguson's complaints. *Loftin* is directly on point. Relying on a Supreme Court decision, *Loftin* held that "exposure to contagious diseases may violate the Eighth Amendment if prison officials, acting with deliberate indifference, expose a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" 3. F. App'x at 662 (quoting *Helling*, 509 U.S. at 35). While the contagious disease at issue in *Loftin* was tuberculosis, not MRSA, the distinction between the two diseases is not so significant as to defeat Ferguson's claim against Estavillo. *Loftin* was concerned with exposure to contagious diseases that could risk serious damage to an inmate's health. MRSA is contagious, spread by having contact with individuals or objects touched by infected individuals, and is "most likely to be spread where people are in close contact with others." *See MRSA Infections: Causes of MRSA Infections*, CENTERS FOR DISEASE CONTROL AND PREVENTION (August 9, 2010), http://www.cdc.gov/mrsa/causes/index.html. MRSA may result in life-threatening infections, *see MRSA Infections: Symptoms of MRSA*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (August 3, 2010), http://www.cdc.gov/mrsa/symptoms, and the Defendants have already

---

[18] Plaintiffs' response to the motion to dismiss haphazardly addressed the issue of qualified immunity, arranging their arguments by Defendant, rather than by the Plaintiff and the individual claims. (Doc. 67 at 17-22.) I will not use this proscribed approach to address the merits of the defense since it is unnecessarily confusing.

conceded that Ferguson's MRSA infection constitutes a serious medical condition (*see* Doc. 61 at 12). *Loftin* and *Helling* establish the right to be free from confinement in a cell with other inmates known to be carrying contagious, harmful diseases. Estavillo is not, therefore, entitled to qualified immunity on Claim One.

        *Claim Two: Delay in Care for MRSA*

        Ferguson's second claim may be summarized as a delay in medical care for complaints of severe headaches for months, which followed his exposure to MRSA and the development of a two-inch-wide pimple on his thigh. (Doc. 43 at 15-16.) I found that Ferguson had properly alleged a constitutional violation, in part relying on *Halpin,* which held that an inmate who suffered from a gastrointestinal problem sufficiently alleged an Eighth Amendment claim by alleging that he complained of severe stomach pains for several months before he was examined by a physician's assistant. 33 F. App'x at 965. The inmate was subsequently diagnosed with a colon infection. *Id*. Likewise, Fergusons complaints of headaches were ignored for months, and when he was finally treated, he was diagnosed with a severe MRSA infection.

        Aside from *Halpin*, I have yet to find a case that specifies that a delay in care for an inmate alleging constant headaches and who has a history of serious infection is an Eighth Amendment violation. Admittedly, *Halpin* is factually distinguishable since it involved an inmate's constant and prolonged claims of stomach pains, not headaches. However, the difference between head and stomach pains will not trump his claim, since I may take a sliding scale approach when the constitutional violations appears "obviously egregious." *Morris*, 672 F.3d at 1196. I find it egregious that a corrections officer could ignore a prisoner's requests for medical attention for his severe pain for months. At this stage in the litigation, I must assume that Ferguson's allegations are true. While I express no opinion as to Ferguson's ability to prove

them, the allegations, on their face, are deeply disturbing. I cannot in good conscience grant Defendants qualified immunity at this stage, so I deny their motion to dismiss Claim Two.

*Claim Three: Denial of Prescription Medication*

Allegations of an outright denial of a medication used to treat a diagnosed ailment overwhelmingly are held to state an Eighth Amendment claim for deliberate indifference. *See Van Ripper*, 67 F. App'x at 503-04; *Olsen*, 312 F. 3d at 1316-17; *Hunt*, 199 F.3d at 1223-24, *Halpin*, 33 F. App'x at 964-65. I have already found that Ferguson properly alleged a constitutional violation, and it seems as if this right is clearly established. Accordingly, I will not permit Defendants qualified immunity on Claim Three, and I deny the motion to dismiss with respect to this claim.

**B.  Parkin 11cv1080**

*Claim Three: Delay in Medical Care for Ankle*

I found that Parkin sufficiently pled facts to show that Defendants acted with deliberate indifference in delaying treatment for his ankle. I have not uncovered any legal authority that precisely states that corrections officers' failure to respond to complaints of an injured limb is constitutional violation. However, I believe that the "sliding scale" is appropriate here and that *Halpin* sufficiently establishes the right. The constitutional violation is clear and egregious. When an inmate presents with a swollen, hot, ruptured ankle, unable to walk, he should immediately get medical attention. *See Garden*, 430 F.3d at 1304 (holding that the subjective component is met if the injury is so obvious that even a lay person would easily recognize the necessity for a doctor's attention). He should not have to contact family outside of the facility in order to get help. I imagine that the reason I could not find a case that was factually more similar is because the need for medical care would have been so obvious that a similarly situated inmate

40

would have been immediately taken to a doctor, leaving him without a basis for a lawsuit. Since

the constitutional violation is egregious, I will not grant Defendants' qualified immunity, and I

deny the motion to dismiss with respect to Parkin's third claim.

     *Claim Four: Denial of Follow-Up Care for Ankle*

     In addition to case law that established that the outright denial of prescribed medication

to treat a diagnosed ailment is an Eighth Amendment violation, there is sufficient case law that

has held that ignoring a doctor's post-surgical instructions is a constitutional violation. In *Estelle*,

the seminal Supreme Court decision on deliberate indifference, the Court held

> that deliberate indifference to serious medical needs of prisoners constitutes the
> 'unnecessary and wanton infliction of pain,' proscribed by the Eighth
> Amendment. This is true whether the indifference is manifested by prison doctors
> in their response to the prisoner's needs *or by prison guards in intentionally
> denying or delaying access to medical care or intentionally interfering with the
> treatment once prescribed.*

429 U.S. at 104-05 (emphasis added). In support of this proposition, the Court cited approvingly

a Second Circuit decision which held that a prison physician violated an inmate's rights by

refusing to administer a prescribed painkiller despite the instructions of the surgeon. *Id.* (citing

*Martinez v. Mancusi*, 443 F. 2d 921 (2d Cir. 1970)). Although *Mancusi* is from the Second

Circuit, I believe that the Supreme Court's citation to this case as an example is sufficient to

make it a clearly established right in the Tenth Circuit. Since the *Estelle* decision, this circuit has

found that corrections officers and prison staff may not completely disregard the instructions of

doctors regarding follow-up care for an inmate. *See Stepnay*, 164 F. App'x at 770 (denial of

follow-up care for MRSA infection can be a constitutional violation if facts show that defendants

knew it required additional medical care); *Rutherford*, 76 F. App'x at 902 (holding an inmate

stated a claim for deliberate indifference by alleging corrections staff provided care that

worsened a back injury, allowed orders for referrals to expire, and failed to schedule prescribed tests, surgery, and follow-up care).

Parkin was prescribed multiple courses of treatment after he was seen for his ankle injury, including follow-up visits, medications, physical therapy, and a referral to a bone specialist. However he was denied all follow-up care. Since there is a clearly established right to medically prescribed follow-up care, Estavillo, Eaton, Wilson, Smith, Goodwin, Ortega, Hopkins, Apodaca, and Cardenas are not entitled to qualified immunity on this claim.

## VII.    Declaratory & Injunctive Relief

A declaratory judgment may be considered superfluous when the inmate is also seeking damages. *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). Likewise, a declaratory judgment or injunctive relief is inappropriate when an inmate is suing under § 1983 and is no longer incarcerated since it "would amount to nothing more than a declaration that [the inmate] was wronged, and would have no effect on the defendant's behavior toward him." *Id.* Since Plaintiffs seek damages and neither are still incarcerated at SCDF, I will dismiss all claims for declaratory and injunctive relief against all Defendants.

## VIII.    Punitive Damages

Defendants move to dismiss all claims for punitive damages against the individual capacity Defendants on the grounds that Plaintiffs have not alleged facts to show that the individual Defendants acted with the requisite "evil motive or intent." (Doc. 61 at 43-44 (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).) However, Defendants offer no individual analysis of the claims to indicate how Plaintiffs have failed to meet this standard. I will not, once again, march through each individual claim when Defendants have not done more than raise a general

argument. I deny the motion to dismiss Plaintiffs' claims for punitive damages with respect to the surviving claims against individual capacity Defendants.

## IX.   Joint & Several Liability for Punitive Damages

Plaintiffs seek to hold all individual Defendants jointly and severally liable for all damages, including punitive damages. Defendants ask that I dismiss these joint and several liability claims with respect to punitive damages, and they cite a Seventh Circuit opinion in support of their contention. (Doc. 61 at 45 (citing *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010).) However, I can find no case law in this circuit with such a prohibition, and Defendants have failed to argue why, based on the law of the Supreme Court or this circuit, I should adopt the Seventh Circuit's approach. I decline to make these arguments for them, so I will deny their request.

CONCLUSION

Although the veracity of the complaints has not been considered or challenged, the complaints paint a rather abysmal picture of the medical care provided at SCDF. However, it is far easier to arouse my empathy than to satisfy the stringent pleading standards of the Eighth Amendment. Since some Plaintiffs have in part failed to meet that burden, I grant in part and deny in part Defendants' motion to dismiss. I rule as follows:

**Ferguson 11cv1001**: I deny the motion to dismiss with respect to Claims One, Two, Three, Six, and Seven. I grant the motion and dismiss with prejudice as to Claims Four and Five and all supervisory liability claims. I dismiss Defendants Porter-Carrejo and Cherry from this action with prejudice. **Ferguson must file an amended complaint within twenty-one days from the date of a party substitution or I will dismiss Claims Six and Seven with prejudice.**

**Ferguson must move to substitute a party no later than May 1, 2013, or I will dismiss his entire complaint without prejudice**.

**Parkin 11cv1080**: I deny the motion to dismiss with respect to Claims Three, Four, Seven, and Eight. I dismiss all supervisory liability claims and Claims One, Two, Five, and Six with prejudice. I dismiss Defendants Porter-Carrejo and Cherry from this action with prejudice. **Parkin has twenty-one days from the entry of this order to file an amended complaint or else I will dismiss Claim Eight with prejudice.**

Since there are only two remaining cases, and since the Plaintiffs no longer share the same legal counsel, consolidation is no longer appropriate. Accordingly, I unconsolidate these cases.

IT IS SO ORDERED.


_____
William P. Lynch
United States Magistrate Judge